(No. 2138, December 5, 1917.)

BOARD OF COM'RS OF LEA COUNTY v. BOARD OF COM'RS OF CHAVES COUNTY, et al.

(Rehearing Denied December 27, 1917.)

SYLLABUS BY THE COURT.

1. Section 4, c. 23, Laws 1917, construed: Held, that under this section the county of Lea, which was created, in the main, from territory formerly embraced within Chaves county, was entitled to money derived from the collection of delinquent taxes on property within the limits of the newly cre-

ated county, and that it is the duty of the treasurer of Chaves county to pay over to the treasurer of Lea county such money so collected, less the state's portion thereof, which should be remitted to the state treasurer.                                    P. 471

2.  Under said act it was the duty of the county treasurer of Chaves county to collect such delinquent taxes.       P 478

3.  Under Laws 1917, c. 23, § 4, providing for the disposition of moneys accruing from certain taxes, the word "accruing" means arising.                                        P. 477

Appeal from District Court, Chaves County, Richardson, Judge.

Action for injunction by the Board of County Commissioners of the County of Lea against the Board of County Commissioners of the County of Chaves and Ben C. Davisson, Treasurer and ex officio Collector of Chaves County.  Judgment for plaintiff, and defendants appeal. Affirmed.

Gibbany & Epstein, of Roswell, for appellants.

Old county is entitled to taxes assessed before separation.  In re Fremont County, 54 Pac. 1085.

L. O. Fullen, of Roswell, for appellee.

Taxes assessed against property formerly in Chaves County but now within Lea County, which had become delinquent at the time act creating latter county took effect belong to latter county.

Cooley on Taxation (3rd Ed.) 414.

### OPINION OF THE COURT.

ROBERTS, J.—Chapter 23, Laws 1917, created the county of Lea, largely from territory formerly embraced within the county of Chaves.  This action was instituted in the court below on behalf of Lea county against the

county of Chaves to determine the right of Lea county to taxes delinquent on property within such county formerly within the county of Chaves, on the day of the organization of the county of Lea, which was June 18, 1917. A restraining order against the county treasurer of Chaves county was asked for the purpose of preventing Ben C. Davisson, treasurer of such county, from collecting the delinquent taxes due on the property within Lea county on such date, and also praying that upon final hearing the treasurer of Chaves county and its board of county commissioners be required to pay over to Lea county all such moneys arising from the collection of delinquent taxes as aforesaid. The injunction prayed for was granted upon a temporary hearing, but upon final hearing was discharged, and judgment was entered directing the treasurer of Chaves county to collect such delinquent taxes, and to pay over all sums received by Chaves county from delinquent taxes collected upon property then embraced within Lea count, and all such moneys as might thereafter be collected, to the proper officer of Lea county. From this judgment the board of commissioners of the county of Chaves and Ben C. Davisson appeal.

[1] The rights of the parties are dependent upon the proper construction of section 4, c. 23, Laws 1917. This section reads as follows:

"Sec. 4. In making apportionments and distribution of school funds and other funds which by law are to be apportioned and distributed among the several counties of the state the portion of such funds to which Lea county shall be entitled according to the population, number of school children, area, amount of taxable property, or other conditions existing, as well as all moneys accruing after the date when this act goes into effect, from taxes upon property and from licenses or privileges, in said county, shall belong to said county of Lea, and shall be paid over to the county treasurer of said county when such treasurer shall have been appointed and qualified as provided by law."

On behalf of appellants it is contended that this section only provides for the apportionment and distribution to the county of Lea of school funds and other funds which are to be distributed by the state auditor, and that it

makes no provision whatever for the turning over to the county of Lea of any part of the money arising from delinquent taxes collected upon the property now situated within such county. Appellee, on the other hand, argues that the section if properly construed by the use of the language, "from taxes upon property and from licenses or privileges in said county shall belong to said county of Lea, and shall be paid over to the county treasurer of said ;ounty when such treasurer shall have been appointed an, qualified as provided by law," clearly shows that Lea county is entitled not only to the moneys distributed by the state auditor, but to the money collected and in the hands of the treasurer of Chaves county. Both parties rely upon the language of section 8 of the act as lending support to the contentions advanced. This section reads as follows:

"The county of Lea shall be entitled to all unpaid taxes which remain unpaid on the 18th day of June, 1917, from persons and property for the maintenance of school districts and municipalities, the area of which has been by this act incorporated into Lea county, and any funds in the hands of the treasurer of the counties of Eddy and Chaves, respectively, at the time this act goes into effect which are properly transferable by them to treasurers of incorporated municipalities situate in Lea county shall be transferred in the regular course of the administration of said office as though this act had not been passed."

It is conceded that this section gives to Lea county all delinquent taxes levied for the support and maintenance of municipalities and school districts embraced within the limits of the new county. It is likewise conceded that in the creation of a new county the parent county is entitled to taxes upon property in the newly created county delinquent or due at the time of its creation, where the Legislature does not otherwise direct; but that the Legislature has full authority to divide such taxes and to direct which of the counties in such a case shall be entitled thereto. Judge Cooley in the first volume of his work on Taxation (3rd Ed.) at pages 414, 415, states the general rule upon this subject as follows:

"The case of the division of counties and towns affords

many opportunities for state apportionment. If one munici-pality is set off from another, the old one, as has been seen, unless it is otherwise provided by statute, will retain the pub-lic property and remain liable for the corporate debts. It will also retain the right to proceed in the collection of the taxes previously voted, and they will belong to it, though collected in part from the territory now set off. And this will be the case even as to a special tax levied for a particular local work, the whole benefit of which will be received by the old municipality. The duty of collecting the tax will also be upon the officers of the old municipality. If this rule results in injustice to either the one party or the other, there can be no remedy except in legislation, for neither could have an action against the other based on equities growing out of the division. But the Legislature has full power to do justice in such cases by making the proper division of prcp-erty and debts, either directly or through commissicners, or by the aid of the local official boards."

From this statement of the law it will be seen that where, in the creation of a new county, territory is taken from an old one, the following status results: (1) The old county, unless otherwise provided by statute, retains all the corporate property; (2) it is alone liable for all the corporate debts; (3) it retains the right to collect taxes previously assessed, even upon property in the new county, and when collected such taxes will belong to the old coun-ty; (4) the duty of collecting such taxes is upon the offi-cers of the old county; and, (5) that the Legislature can make such division as it chooses of such property and debts, and regulate the matter of the collection and dispo-sition of taxes.

Section 1119 of the Code of 1915 provides where a new county is created from territory of an old county having an indebtedness, bonded or otherwise, that "unless such indebtedness has been otherwise provided for," the tax assessed for the payment of such indebtedness shall be collected against persons and property formerly in the old county, but embraced within the new, just as it is collect-ed against property in the old county, and that the offi-cers of the new county shall assess and collect the same as therein provided. It is a matter of common knowledge, of which the court will take judicial notice, that at the time Lea county was created, Chaves county had a bonded indebtedness of more than $175,000. The records of the·

state tax commission, of which the court will also take judicial notice, show that the value of the taxable property ascertain the total value of the property in each county, making the latter's portion of such bonded indebtedness in round numbers $25,000. It will also be noted that these bonds are for improvements, practically all of which remain in Chaves county, and of which Lea county will reap no future benefit.

Section 9 of the act provides that as soon as practicable the board of loan commissioners of this state shall ascertain the net amount of indebtedness of Chaves county by deducting the cash on hand to meet the same, and also ascertain the total value of the property in each county, as shown by the tax rolls of 1916, and shall determine Lea county's portion of such debt, "by the ratio which the value of the taxable property in the area so taken from Chaves county bears to the total value of the taxable property in such county as shown by said assessment roll," and the amount so found to be due by Lea to Chaves county is thereby declared to be due.

Section 10 of the act then provides that the proper autthorities of Lea county shall issue and sell bonds for the amount so found to be due, and turn the proceeds over to Chaves county, and in the event same cannot be sold at par with accrued interest, that the bonds and coupons shall be turned over to Chaves county, and the proper officers of Lea county are required to levy and collect sufficient taxes to liquidate said bonds and interest coupons as the same mature. It will thus be seen that Lea county is charged with her full share of Chaves county's indebtedness, although practically all the improvements built from the proceeds of such bonds remain in Chaves county.

Sections 4 and 8 of the act provide for the sources of revenue for Lea county, from the date of its creation. Section 4 provides for the distribution and disposal of those revenues which go for the support of the county, and into the county treasury for that purpose, and section 8 provides for the disposition of those taxes levied and collected to support school districts and municipalities. The taxes and income therein referred to may be classified in

four classes. We construe section 4 as providng two sources of revenue to the county of Lea and its disposition as follows:

(1) The portion of such funds to which Lea county shall be entitled according to population, number of school children, area, amount of taxable property, or other conditions existing. This provision, we think, relates solely to the apportionment made by the state officers charged with the duty in such cases. Appellants argue that this, as well as the succeeding portion of the section, relates to the duties of the state auditor and has no reference whatever to the county treasurer of Chaves county. The state auditor however, has, so far as we are aware, no power, nor is he charged with the duty of making any apportionment of moneys to any of the counties of the state. The apportionment of school funds is made by the state superintendent of public instruction. This fund is derived from taxes levied upon all property within the state and from various other sources not necessary to be enumerated here. The money derived from the United Stats government from forest reserves and paid over to the various states, is apportioned by the state treasurer.

(2) Appellant contends that the language, "as well as all moneys accruing after the date when this act goes into effect from taxes upon property from licenses or privileges in said county, shall be long to said county of Lea," relates likewise to money to be apportioned by those charged with the duty of making the apportionments and distribution provided for in the first portion of this section, and their brief contains a diagram of the language by which they undertake to show that according to the grammatical construction of the language it could have no other meaning. Mr. Sutherland in his work on Statutory Construction (2d Ed.) at section 409, says:

"It is better always to adhere to a plain common sense interpretation of the words of the statute than to apply to them a refined and technical grammatical construction."

The first portion of the section takes care, as we view it, of all the mnoeys which might be in the hands of any

state officer which would be required to be distributed to the various counties. And to give the latter portion of the section the construction for which appellants contend would be to make it but a repetition of provisions already fully covered. No portion of the privileged tax, so far as we are aware, passes into the custody of any state official. The license tax for selling intoxicating liquor of course goes to the state treasurer and passes into the school fund, but this, as stated, has already been taken care of. The county license fee for the sale of intoxicating liquor goes, however to the county treasurer, as likewise do the occupation licenses outside of incorporated cities and towns. It was evidently these fees that the Legislature had in mind by the provision in question. The same is true as to the taxes collected. In our judgment the two classes of funds referred to in the section are entirely separate and distinct; the first, in a general way, being paid into the state treasury, and distributed by designated officials, and paid out upon the warrant of the state auditor; the second was property collected by the collector of Chaves county, and paid out by him. There is nothing in the section to bear out the contention of appellant that all the funds referred to are those handled by the state auditor. He is not named, nor is any other officer named as the person by whom they shall be distributed. Since these funds arose from various sources, and are collected and paid out by several officers in the line of their duties, it was unnecessary to name the officer who should pay the same to the treasurer of Lea county, and the provision that they should be paid over was sufficient direction and authority for any and every officer receiving same, or any of them, to pay them over to such officer of Lea county. Our construction is strengthened by a consideration of section 8 of the act. This section distinctly provides for the paying over to the proper officials within Lea county of (1) all taxes collected for school purposes, and (2) those assessed and collected for municipalities in the new county. There is but one slight ambiguity in the latter portion of section 4 following the words "as well as," and this is in the use of the word "accruing" after the word "moneys." The

phrase is "moneys accruing after the date when this act goes into effect," and not "taxes accruing."

[3] Among the first definitions given the word "accruing" in 1 C. J. 733, is "arising," which is the reasonable and logical definition to be given to it in this case. It is a well-settled principle of statutory construction that "uncertain or ambiguous words will be construed so as, if possible, to produce a reasonable result" (36 Cyc. 1112), and that "in obedience to the cardinal rule of ascertaining the intention of the Legislature, if more than one significance may reasonably be attached to the language used, or a literal construction will make the act absurd, or will lead to injustce, the court may properly resort to construction 36, Cyc 1116. In order to ascertain the legislative intent, "every statute must be construed with reference to the object intended to be accomplished by it. In order to ascertain this object it is proper to consider the occasion and necessity of its enactment, the defects or! evils in the former law, and the remedy provided by the new one; and the statute should be given that construction which is best calculated to advance its object, by suppressing the mischief and securing the benefits intended." 36 Cyc. 1110,

Let us analyze the act creating Lea county upon the principles just quoted. The purpose of the act was clearly to create a new county, and provide for its maintenance. The Legislature determined that the occasion and necessity for its creation existed. If no provision had been made therefor by any statute, the evils which would have followed would have been (1) that certain debts of the old county would have fallen in full upon it, while its means of payment had been reduced, and (2) no provision would have been made for running the new county pending the assessment and collection of taxes. The first of these was fully met by providing that the new county should pay its proportion in full of the debts by a bond issue. It is conceded that the latter evil was provided for as to schools and municipalities by delinquent taxes. It is a well-known fact that practically the only source of revenue for current expenses of a county from June 18th to near Decem-

ber 1st following, is from delinquent taxes. Lea county must carry on its business during that period, and if an equally reasonable construction of the act can be made to provide for this, certainly an unreasonable and strained construction should not be adopted. Especially is this true when the unjust result would follow that Chaves county would collect twice, and Lea county pay twice, at least a part of the debt assumed. We can conceive of no reason why the Legislature could have intended to except delinquent taxes of one special class, and thus paralyze the county's activities for half a year, and yet include all other classes of delinquent revenues.

The reasonable legislative intent, as gathered from the four corners of the act, leads us to this invitable conclusion: Lea county was to pay its full proportion of Chaves county's debt, as shown by the net balance then due, Chaves county retaining the property secured by reason of that debt, and Lea county was to have all revenues and income from property within its limits, whether delinquent taxes or those thereafter maturing, as in a measure compensating the inequalities arising from its assumption of a portion of Chaves county's debt. For the reasons stated we conclude that Lea county is entitled to the moneys arising from the delinquent taxes in question.

[2]    One question remains, however, for determination, viz: Did the court err in directing the treasurer of Chaves county to collect such delinquent taxes and pay the portion remaining after settling with the state, to the treasurer of Lea county? As heretofore shown in the quotation from Cooley on Taxation, supra, in the absence of legislative direction to the contrary, the duty of collecting the tax, theretofore assessed, will also be upon the officer of the old municipality. There is nothing in the act creating Lea county which requires or authorizes the treasurer of Lea county to collect these taxes, nor is there any provision made for the tax rolls of the treasurer's office of Chaves county showing such taxes, to be copied or transferred to the county of Lea. Clearly as to the taxes provided for in section 8, it was contemplated that all delinquent taxes for school and municipal purposes should be

collected by the treasurer of Chaves county. Property taxes are collected at the same time as school and municipal taxes and from the same rolls, and no additional burden is thus placed on the treasurer of Chaves county, and there is no reason why he should have been required to collect one or two classes of these taxes and not all of them. To say the least, the act in question is silent upon the question as to which of the two officers should collect the taxes, and this being true, under the rules stated, the duty would devolve upon the treasurer of Chaves county.

For the reasons stated, the judgment of the district court will be affirmed, and it is so ordered.

HANNA, C. J., concurs. PARKER, J., being absent, did not participate.